**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

| | |
|---|---|
| MICHAEL T. SMITH, ADMINISTRATOR OF THE ESTATE OF ADRIENNE DUMAS, and MICHAEL T. SMITH, CONSERVATOR FOR ELI DUMAS, : : : : : : : : Plaintiff, : : v. : : 3M ELECTRONIC MONITORING, INC., F/K/A ELMOTECH, INC., A DIVISION OF 3M COMPANY, and JOHN DOES 1-10, Unknown Potential Defendants, : : : : : : : : : : Defendants. : | CIVIL ACTION NO. 1:12-CV-1908-RWS |

**ORDER**

This case comes before the Court on Defendant 3M Electronic Monitoring, Inc.'s Motion to Dismiss [3]. After reviewing the record, the Court enters the following Order.[1]

---

[1] The Court notes that Defendant requested oral argument on its motion, pursuant to Rule 7.1E of the Local Rules for the Northern District of Georgia and this Court's Standing Order, representing to the Court that a lawyer who is less than five years out of law school will conduct the oral argument on at least one substantial issue in the case. (Def.'s Reply Br. in Supp. of Mot. to Dismiss ("Def.'s Reply"), Dkt. [6]

## Background[2]

This is a suit for wrongful death brought by Michael T. Smith, as Executor of the Estate of Adrienne Dumas and as Conservator for Eli Dumas ("Plaintiff").  In early 2010, following a third charge for driving under the influence of alcohol, the State Court of Fayette County sentenced Adrienne Dumas ("Dumas") to thirty days in jail, followed by probation.  (Compl., Dkt. [1] ¶ 5.)  The terms of her probation included one year of house arrest and complete abstinence from alcohol.  (Id.)  While she was under house arrest, the state court ordered mandatory home alcohol testing for Dumas.  (Id.)  If she failed the alcohol testing, the court was to be notified immediately and a probation revocation hearing scheduled.  (Id. ¶ 6.)

---

at 9-10.)  While it is the Court's practice to honor such requests, circumstances in the present case cause the Court to decline the request in this instance.  Because of the current case load, the Motion to Dismiss has been pending for an inordinate time.  Having reviewed the briefs of the parties and determined that the issues can be resolved without a hearing, the Court is not inclined to delay the case longer simply to schedule oral argument.  Parties should not be discouraged from making such requests in the future with the expectation that they will be granted.

   [2] Because the case is before the Court on a motion to dismiss, the facts alleged in the Complaint are accepted as true.  Bryant v. Avado Brands, Inc., 187 F.3d 1271, 1273 n.1 (11th Cir. 1999).

Dumas' probation officer contacted B&M House Arrest Services, Inc. ("B&M") to install a home alcohol monitoring system at Dumas' residence and to monitor her day-to-day alcohol testing. (Id. ¶ 7.) Thus, on or around February 24, 2010, B&M installed a MEMS 3000 alcohol monitoring system at Dumas' residence. (Id. ¶ 8.) B&M, through its employee, Faye Day, contracted with ElmoTech, Inc. ("ElmoTech")[3] to perform the day-to-day monitoring of Dumas via the MEMS 3000 alcohol monitoring system. (Id. ¶ 9.) ElmoTech was to review each test taken by Dumas and notify Faye Day of B&M in the event Dumas failed a test. (Id. ¶ 14.) B&M, in turn, was to notify the state court of any failed test. (Id. ¶ 43.)

Dumas initially tested successfully for abstaining from alcohol. (Id. ¶ 15.) However, between March 7 and May 4th, Dumas failed the alcohol test 183 times. (Id.) After this point, Dumas went through intermittent periods of failed and successful testing. (Id. ¶¶ 18-26.) ElmoTech attempted frequently to

---

[3] ElmoTech is a for-profit company providing offender monitoring and tracking services for the criminal justice industry. (Compl., Dkt. [1] ¶ 10.) In 2011, ElmoTech was merged into Defendant 3M Electronic Monitoring Inc. ("Defendant 3M EMI"), a wholly owned subsidiary of Defendant 3M Company. (Id.) Plaintiff seeks to hold Defendant 3M EMI liable, as ElmoTech's successor, for ElmoTech's alleged negligence.

3

notify B&M of Dumas' failed tests.  (See, e.g., id. ¶ 17 (sent four emails to Faye Day at B&M regarding four failed tests on March 7); id. ¶ 19 (called Faye Day at B&M five times and emailed her once regarding failed tests on March 10); id. ¶ 20 (emailed Faye Day at B&M five times regarding failed tests on March 11).)  Indeed, Plaintiff alleges that "ElmoTech continued to call and email Faye Day at B&M regularly regarding Dumas' failed testing."  (Id. ¶ 26.)

On or about May 3, 2010, Dumas was found dead in her apartment, the cause of death attributed to a diabetic coma induced by excessive alcohol consumption.  (Id. ¶¶ 29-30.)  Plaintiff states that "[t]hroughout the time ElmoTech was being paid to monitor Dumas, Dumas was regularly failing the tests and regularly consuming alcohol."  (Id. ¶ 31.)  Plaintiff further contends that "[a]lthough Dumas was failing day after day, ElmoTech's only action was to contact the same person day after day, even though [sic] should have been clear to any reasonable person that Faye Day at B&M was not taking adequate, or any, action to stop Dumas from drinking."  (Id. ¶ 32.)  Finally, Plaintiff states that "ElmoTech never contacted local law enforcement, never contacted Dumas' probation officer, and never contacted the court or the judge or the court who had ordered home alcohol monitoring for Dumas."  (Id. ¶ 34.)

4

Based on the foregoing facts, Plaintiff filed this suit for wrongful death against Defendant 3M based on ElmoTech's alleged negligence. Plaintiff alleges that "ElmoTech had a duty to reasonably monitor Dumas and to report Dumas to Faye Day at B&M if Dumas failed a test." (Id. ¶ 41.) Plaintiff further alleges, "When Dumas continued failing the testing on a daily basis in spite of numerous communications to Faye Day at B&M, ElmoTech knew or should have known that Faye Day at B&M was not taking adequate action to notify the [state court] regarding Dumas' violations, and, more importantly, that the [state court] was not aware that Dumas was regularly failing her alcohol tests and regularly drinking alcohol." (Id. ¶ 43.) Finally, Plaintiff alleges that "once Dumas had failed [the test] thirty, forty, or fifty or more times . . . ElmoTech had a duty to take some action—other than continuing to contact Faye Day at B&M over and over again—to alert the [state court] regarding Dumas' situation." (Id. ¶ 44.)

Defendant 3M EMI now moves to dismiss the Complaint for failure to state a claim upon which relief may be granted, pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(6). Defendant argues, essentially, that ElmoTech was under no legal duty to warn the state court that Dumas had been

5

drinking or otherwise protect Dumas from her own choice to drink.  (See generally Mem. in Supp. of Def.'s Mot. to Dismiss ("Def.'s Mem."), Dkt. [3-1].)  The Court sets out the legal standard governing Defendant's motion before considering the motion on the merits.

## Discussion

### I.     Legal Standard

Federal Rule of Civil Procedure 8(a)(2) requires that a pleading contain a "short and plain statement of the claim showing that the pleader is entitled to relief."  While this pleading standard does not require "detailed factual allegations," "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do."  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)).  In order to withstand a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  Id. (quoting Twombly, 550 U.S. at 570).  A complaint is plausible on its face when the plaintiff pleads factual content necessary for the court to draw the reasonable inference that the defendant is liable for the conduct alleged.  Id.

AO 72A
(Rev.8/82)

At the motion to dismiss stage, "all-well pleaded facts are accepted as true, and the reasonable inferences therefrom are construed in the light most favorable to the plaintiff." Bryant v. Avado Brands, Inc., 187 F.3d 1271, 1273 n.1 (11th Cir. 1999). However, the same does not apply to legal conclusions set forth in the complaint. Sinaltrainal v. Coca-Cola Co., 578 F.3d 1252, 1260 (11th Cir. 2009) (citing Iqbal, 556 U.S. at 678). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Iqbal, 556 U.S. at 678. Furthermore, the court does not "accept as true a legal conclusion couched as a factual allegation." Twombly, 550 U.S. at 555.

**II.   Analysis**

As Defendant correctly states, "[i]n order to have a viable negligence action, a plaintiff must satisfy the elements of the tort, namely, the existence of a duty on the part of the defendant, a breach of that duty, causation of the alleged injury, and damages resulting from the alleged breach of the duty." Rasnick v. Krishna Hospitality, Inc., 713 S.E.2d 835, 837 (Ga. 2011). "A legal duty sufficient to support liability in negligence is either a duty imposed by a valid statutory enactment of the legislature or a duty imposed by a recognized

7

common law principle declared in the reported decisions of our appellate courts." Murray v. Georgia Dep't of Transp., 644 S.E.2d 290, 298 (Ga. Ct. App. 2007) (internal quotes and citation omitted).  "The existence of a legal duty is a question of law for the court." Rasnick, 713 S.E.2d at 837.

As stated in the Background section, supra, pursuant to its agreement with B&M, ElmoTech was obligated to monitor Dumas' test results and report any failed test to Faye Day at B&M.  Plaintiff's Complaint does not allege that ElmoTech breached these contractual obligations but concedes that ElmoTech conducted the required testing and regularly notified Faye Day of failed test results.  But Plaintiff further alleges that ElmoTech "knew or should have known that Faye Day at B&M was not taking adequate action to notify the [state court]" of Dumas' violations, and that "ElmoTech had a duty to take some action—other than continuing to contact Faye Day at B&M over and over again—to alert the [state court] regarding Dumas' situation." (Compl., Dkt. [1] ¶ 43.)  The Court agrees with Defendant, however, that Georgia law imposed on it no such duty.

"In order to proceed on a tort claim based upon a failure to render aid, the plaintiff, as a threshold matter, must demonstrate that the defendant had a legal

8

duty to render aid; even the actor's realization that some action on his or her part is necessary for another's aid or protection does not, in and of itself, impose upon the actor the duty to undertake such action." Rasnick, 713 S.E.2d at 837.  Moreover, the general principle is well-settled under Georgia law that "a person is under no duty to rescue another from a situation of peril which the former has not caused." Id.  See also Galanti v. United States, 709 F.2d 706, 709 (11th Cir. 1983) ("The general rule in Georgia is that one has no duty to warn or protect another person from a foreseeable risk of harm simply because of one's knowledge of the danger.") (citations omitted).

Plaintiff does not dispute the foregoing but concedes "the general rule," "that a person has no legal duty to assist another human being who is in danger."  (Pl.'s Resp. to Def.'s Mot. to Dismiss ("Pl.'s Resp."), Dkt. [4] at 3.)  Plaintiff contends, however, that this rule does not apply in this case because a "special relationship" existed between the parties.  (Id. at 3-6.)  Plaintiff argues this "special relationship" arose because "Dumas [was] a third party beneficiary under [the contract between B&M and ElmoTech]" and because "alcohol was involved."  (Id. at 4, 5.)  Plaintiff also argues that ElmoTech had a duty to protect Dumas because its negligence in failing to reasonably monitor Dumas

9

increased the risk that she would drink to death.  (See, e.g., id. at 7 (". . . [ElmoTech]'s failure to reasonably monitor Dumas increased her risk of harm . . . .").

The Court finds Plaintiff's arguments to be without merit.  The Court recognizes the exception to the general rule, stated above, that "when some special relation exists between the parties, social policy may justify the imposition of a duty to assist or rescue one in peril."  Thomas v. Williams, 124 S.E.2d 409, 413 (Ga. Ct. App. 1962).  For example, "such a special relation exists between an officer and a prisoner in his custody . . . ."  Id. (citation omitted).  Plaintiff cites no authority, however, and the Court is aware of none, for finding a special relation between the parties on grounds that Dumas was a third party beneficiary to the contract between B&M and ElmoTech.  Assuming without deciding that Dumas was, in fact, a third party beneficiary of that contract, Plaintiff cites no authority for the proposition that such status gave rise to a duty on the part of ElmoTech to protect Dumas from her decision to drink.  As Defendant argues, this is especially true where, as here, "the harm is not alleged to have occurred as a result of ElmoTech's breach of contract" (Def.'s Reply Br., Dkt. [6] at 4).

10

Nor did the fact that "alcohol was involved" create a special relation between the parties, giving rise to a duty to protect Dumas. Indeed, the case Plaintiff cites in support of this argument, Thomas, 124 S.E.2d at 326-27, is inapposite. In Thomas, the court found a duty on the part of a police officer to rescue a prisoner from a fire in his cell; this duty did not arise, however, because of the prisoner's intoxication but, rather, because of the special relation that exists between an officer and a prisoner in his custody. Id. Accordingly, this case does not support Plaintiff's argument that ElmoTech had a duty to rescue Dumas because "alcohol was involved."

Plaintiff's second argument—that ElmoTech had a duty to protect Dumas because its negligence increased her risk of harm—is similarly unavailing. (See Pl.'s Resp., Dkt. [4] at 5 ("Dumas has made out a prima facie case that 3M EMI [sic] negligence in inadequately providing reasonable monitoring services was responsible for Dumas' situation. That situation includes 3M EMI being partially responsible for Dumas drinking almost every day for over two months without any consequences.").) The Court recognizes the principle that "if the defendant's own negligence has been responsible for the plaintiff's situation, a relation has arisen which imposes a duty to make a reasonable effort to give

11

assistance, and avoid further harm." Thomas, 124 S.E.2d at 413.  This principle does not apply in this case, however, because no conduct on the part of ElmoTech caused or was responsible for Dumas' decision to drink.  Although Dumas did not intervene to affirmatively prevent Dumas from drinking, it was under no duty to do so.  Accordingly, Plaintiff has not shown any negligence on the part of ElmoTech that caused Dumas' peril.  On the contrary, the allegations show that ElmoTech discharged its contractual obligations to conduct and monitor Dumas' alcohol tests and to report any violations to Faye Day at B&M. Nothing more was required of it in this case.

Having failed to show that ElmoTech was under a legal duty to protect Dumas from her own decision to drink, Plaintiff cannot state a claim for negligence.  Plaintiff's suit for wrongful death therefore is due to be dismissed.

## Conclusion

In accordance with the foregoing, Defendant's Motion to Dismiss [3] is **GRANTED**.

**SO ORDERED**, this   18th   day of March, 2013.

                                                                   _____
                                                                   **RICHARD W. STORY**
                                                                   United States District Judge